**Commonwealth v. Zemble**

*Martin A. Flayhart, District Attorney*, for Commonwealth.
*Stanley Zemble, pp.*, for defendant.

BROWN, *P.J.*, May 24, 1979—Defendant was convicted before a district justice of the peace on the charge of issuing a bad check in violation of section 4105(a) of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §4105. That section provides in pertinent part:

"(a) *Offense defined.*—A person commits an offense if he issues or passes a check . . . for the payment of money, knowing that it will not be honored by the drawee.

"(b) *Presumption.*—For the purposes of this section . . . , an issuer is presumed to know that the check would not be paid, if:

"(1) the issuer had no account with the drawee at the time the check or order was issued; or

"(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal."

The events giving rise to the present prosecution occurred on August 10, 1978. At that time defendant and his wife were in the process of buying a home from Mr. and Mrs. Donald Bundy. On the afternoon of that date, defendant appeared for a

real estate settlement in Lock Haven at the office of his attorney, J. Michael Williamson, Esq. In the negotiations leading up to the purchase of the home, defendant felt that he had reached an agreement with the Bundys regarding their leaving an electric stove at the premises as part of the sale. However, several days prior to the settlement, the Bundys sent a moving van to pick up their furniture and this van took the stove in question. At the time of settlement, Mr. Zemble was upset over losing the stove and a disagreement of sorts developed during the course of settlement.

The Bundys, who resided in Florida, were not present at the settlement and were instead represented by Allan W. Lugg, Esq. On behalf of the Bundys, Mr. Lugg would make no adjustment with regard to the stove, and Mr. Zemble was advised by his attorney that if he wished to question the failure of the Bundys to leave the stove at the premises, he could either go through with the settlement and then sue them, or he could refuse to go through with the settlement. Mr. Zemble was further advised by Mr. Williamson that, in view of the fact that the Bundys were in Florida, he would most likely have to institute suit with regard to the stove in that jurisdiction.

Mr. Zemble, therefore, elected to proceed with the real estate settlement and as a part of that settlement drew a check dated August 10, 1978, to Donald Bundy in the amount of $159.81. The check was drawn on Mid-State Bank and Trust Company of State College, Pa., and signed by defendant. Following the settlement, Mr. Lugg upon returning to his office suspected that defendant might attempt to stop payment on the check, and he called Mr. Williamson who was still conferring with defend-

ant, at which time he advised Mr. Williamson that if payment were stopped he would institute a criminal prosecution for the issuance of a bad check. Mr. Williamson conveyed this message to defendant.

Later that evening, defendant and his wife went shopping for the purpose of securing a stove. Upon discovering the prices for such an item, defendant became more upset over the whole transaction and the following day he contacted Mid-State Bank and advised it to stop payment on the check in question.

Defendant testified that at the time he issued the check his account contained sufficient funds to cover the same and that he did not intend at that time to stop payment on the check. No evidence was introduced by the Commonwealth to show that defendant's account contained insufficient funds to cover the check when it was issued.

Two elements are necessary to sustain a conviction under section 4105(a). The first involves the issuing of a check for the payment of money, and there is little question that the Commonwealth has demonstrated the existence of this element. The second element requires that defendant know that the check will not be honored by the drawee. This element presents some difficulty in the present case.

Since defendant had an account at the drawee bank and since payment of the check was not refused for lack of funds, neither presumption afforded the Commonwealth under section 4105(b) is applicable to the case. Thus, the required criminal knowledge that the check would not be honored when presented for payment must be gleaned, if at all, from some other facet of the evidence.

By necessity, the Commonwealth's theory must rest upon the proposition that defendant at the time

of issuing the check intended to stop payment on it, and therefore at that time knew that it would not be honored. Defendant's explanation as to when and why he was motivated to stop payment is sufficiently plausible to create a reasonable doubt as to whether he harbored the intent to stop payment on the check when he issued it at the time of settlement.

The negating of defendant's criminal responsibility in this proceeding in no way affects his civil liability for the same check. All that is being decided today is that a reasonable doubt exists as to whether defendant intended to stop payment of the instrument when he issued it. Any subsequent civil proceeding arising out of the transaction in question would be governed by the appropriate rules relating to that action.

## VERDICT

And now, May 24, 1979, based upon the foregoing findings of fact, the court finds defendant Stanley Zemble not guilty of issuing a bad check under section 4105(a) of the Crimes Code.